U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 15 2018
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEMARCUS JAMES WILLIAMS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:17-CV-581-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION**
**and**
**ORDER**

Before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Demarcus James Williams, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent. After having considered the pleadings and relief sought by petitioner, the court has concluded that the petition should be dismissed as time-barred.

**I. Factual and Procedural History**

On August 7, 2003, in the 297th District Court, Tarrant County, Texas, Case No. 0895781AR, a jury found petitioner guilty of one count of engaging in organized criminal activity and one count of murder and, the next day, assessed his punishment at 50 years' confinement for each offense. (Clerk's R., vol. 1, 158.) Petitioner appealed, but the state appellate court affirmed the

trial court's judgment and, on July 27, 2005, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Docket Sheet 1-2.) Petitioner did not seek writ of certiorari. (Pet. 3.) Petitioner also filed two state habeas-corpus applications challenging his convictions. The first, filed on November 16, 2006, was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court.[1] (SHR01[2] 22-23 & Action Taken.) The second, filed on March 20, 2017, was dismissed as a subsequent application by the Texas Court of Criminal Appeals. (SHR02 18 & Action Taken.) This federal petition challenging his convictions was filed on July 14, 2017.[3] (Pet. 10.)

The state appellate court summarized the evidence at trial as follows:

> On July 31, 2002, [petitioner], along with other members of a group [the Downtown Crips], were observed [by witnesses who knew him] chasing Donald Watkins, now deceased, in the courtyard of the Ripley Arnold housing complex. Once [petitioner] and the other group members reached Watkins they continuously kicked, stomped, and

---

[1] A state habeas application filed by a prisoner is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state applications do not, however, provide the dates he placed them in the prison mailing system. Thus, for purposes of this opinion, each application is deemed filed on the date the "Inmate's Declaration" was signed by petitioner.

[2] "SHR01" refers to the record of petitioner's state habeas proceeding in WR-72,138-01; "SHR02" refers to the record of his state habeas proceeding in WR-72,138-02.

[3] A federal habeas petition filed by a prisoner is also deemed filed when placed in the prison mailing system. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

2

beat him for approximately fifteen to twenty minutes.
          Betsy Harrington, who witnessed the beating, heard
          [petitioner] yelling at Watkins, "That'll teach you to
          [f---] me out of my money." "This is the last time you
          [f---] me out of my money." "I'll teach you."

          Watkins died from blunt force head injuries.
          Daniel Konzelmann, the assistant medical examiner,
          testified that Watkins received between thirty-four and
          thirty-five injuries to his head and neck, which
          included injuries to both sides of his brain.

(Mem. Op. 2.)

## II.  Issues

In four grounds for relief, petitioner claims that he is actually innocent of the offenses based on newly discovered evidence (ground one); that he received ineffective assistance of counsel (grounds two and three); and that his indictment was "faulty" (ground four). (Pet. 6-7.) Respondent asserts that the petition is untimely under the federal statute of limitations. (Resp't's Preliminary Answer 6-14.)

## III.  Statute of Limitations

Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to

3

filing an application created by State action in
                violation of the Constitution or laws of the
                United States is removed, if the applicant was
                prevented from filing by such State action;

                    (C) the date on which the constitutional
                right asserted was initially recognized by the
                Supreme Court, if that right has been newly
                recognized by the Supreme Court and made
                retroactively applicable to cases on collateral
                review; or

                    (D) the date on which the factual predicate
                of the claim or claims presented could have been
                discovered through the exercise of due diligence.

            (2) The time during which a properly filed
        application for State post-conviction or other
        collateral review with respect to the pertinent
        judgment or claim is pending shall not be counted
        toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Because petitioner's claims relate to his 2003 convictions, subsection (A) is applicable.[4] Under that provision, the limitations period began to run on the date on which the judgment of conviction became final by the expiration of the time for seeking direct review. Therefore, petitioner's convictions became final upon expiration of the time that he had for filing a petition for writ of certiorari in the United States Supreme

---

[4]To the extent that petitioner's "newly discovered evidence" claim could arguably invoke subsection (D), limitations commences when the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence, not when it was actually discovered by the petitioner. The running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits. Although the affidavit in question may not have existed at an earlier date, petitioner has not presented sufficient information to show that the limitation period should commence under subsection (D).

4

Court on October 25, 2005. *See Jimenez v. Quarterman,* 565 U.S. 134, 119-20 (2009); SUP. CT. R. 13. Accordingly, the statute of limitations began to run the following day and closed one year later on October 25, 2006, absent any tolling.

Tolling of the limitations period may be appropriate under the statutory provision in § 2244(d)(2) and/or as a matter of equity. Petitioner's state habeas applications filed after limitations had already expired did not operate to toll the limitations period under the statutory provision. *Moore v. Cain,* 298 F.3d 361, 366-67 (5th Cir. 2002); *Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir. 2000). Nor has petitioner demonstrated that equitable tolling is justified.

For equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way'" and prevented him from filing a timely petition or he can make a "convincing showing" that he is actually innocent of the crime for which he was convicted. *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013); *Holland v. Florida,* 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)). To use actual innocence as a "gateway" to overcome the expiration of the statute of limitations, a petitioner is required to produce "new reliable evidence" that was not presented at trial and that is sufficient to persuade the district court that "it is more likely than not

5

that no reasonable juror would have convicted him in light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schup v. Delo*, 513 U.S. 298, 327 (1995)).

Toward that end, petitioner refers the court to an affidavit, executed on January 12, 2017, of medical expert and pathologist, Harry J. Bonnell, M.D. (SHR02 24-27.) In the affidavit, Dr. Bonnell avers that, based on a review and analysis of the trial testimony transcript, the victim's medical records, and his education, training, and experience, it is his "understanding and opinion to a reasonable degree of medical certainty that" (all misspellings are in the original):

- [The victim] was found unresponsive, chest down with his head in a puddle of blood. There was evidence of an impact injury to the face and a laceration of the forehead. He was unable to be intubated and was transferred to a medical facility.

- There he remained unresponsive and was found to be in hypertensive crisis with blood pressures in the range of 200/115 as well as tachycardia of 170-180 beats per minute.

- Radiological imaging revealed a nasal fracture with no other fractures identified. There was subarachnoid (surface of the brain) bleeding but no bruising of the brain. The brain was swollen but had not herniated (swelling causing the base of the brain to be forced out the bottom of the skull due to pressure). No traumatic injury to the brain was identified.

- Scan of blood flow into the brain revealed no blood flow into the brain (indicating no additional brain bruising would be possible) and [the victim] was declared brain dead. Toxicological exam was significant for the presence of benzoylecognine, a breakdown product of cocaine which is known to cause hypertension, tachycardia and subarachnoid hemorrhage.

6

> He was pronounced dead approximately 5 hours after first found unresponsive.
>
> - The autopsy was not submitted as an exhibit and the photos admitted as exhibits are restricted to the surface of the hands and head; despite the absence of findings on radiological exam, Dr. KONZELMAN testified there was bilateral bruising but the testimony seems to describe skin/scalp bruising and not brain bruising, which would have been expected to be seen in radiological imaging and could not have occurred after the brain scan since there was no blood flow into the brain.
>
> - Most significantly, although not seen ante-mortem, he testified there was bleeding in a deep area of the brain called the pons. Pontine hemorrhage is **specific for** a hypertensive bleed and not trauma because it is protected in the deepest portion of the brain.
>
> - Dr. KONZELMAN addresses the presence of morphine in the toxicology results and attributes it to the breakdown of heroin indicating that he did not read the medical records which clearly reflect the administration of morphine by medical personnel. The toxicologist did not follow up on the urine screen positive for morphine suggesting that s/he realized that the morphine was given therapeutically and not worth testing for.
>
> - Dr. KONZELMAN testified that he ruled out natural causes of subarachnoid hemorrhage so deduced it must be traumatic; he never ruled out drugs as the cause despite the presence of cocaine and its metabolite which are notorious for causing subarachnoid and pontine hemorrhage as causes of death. He readily acknowledged that there was no herniation so herniation due to cerebral swelling could not be the cause or mechanism of death either.

(Id. at 25-27 (emphasis in original).)

The record reveals that the issue of potentially conflicting causes of the victim's death was addressed at trial. (SHR02 60-78.) Petitioner thus knew or could have reasonably discovered the basis for any habeas claims arising from such matters at the time

7

of trial, well in advance of the expiration of the one-year limitations period. Petitioner's extreme delay mitigates against equitable tolling. "[E]quity is not intended for those who sleep on their rights." *See Fisher v. Johnson,* 174 F.3d 170, 710, 715 (5th Cir. 1999) (quoting *Covey v. Arkansas River Co.,* 865 F.2d 660, 662 (5th Cir. 1989)). Furthermore, Dr. Konzelmann performed the autopsy, which included both an exterior and interior examination of the victim's neck and head, and concluded that although he could not be certain that cocaine did not contribute to the victim's death to some degree, the blows to the victim's head "easily explain the death." (Id. at 65, 75.) On the other hand, Dr. Bonnell expresses no conclusive alternative cause of death and his medical opinion is based on a limited review of the trial transcript and the victim's medical records. The court cannot say that the opinion of Dr. Bonnell, who neither treated nor examined the victim, is more persuasive than Dr. Konzelmann's testimony at trial, such that no jury, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

Accordingly, petitioner's federal petition was due on or before October 25, 2006. His petition, filed on July 14, 2017, is therefore untimely.

For the reasons discussed, it is ORDERED that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as time-barred. Petitioner has not

made a showing that reasonable jurists would question this court's procedural ruling. Therefore, it is further ORDERED that a certificate of appealability be, and is hereby, denied.

SIGNED October 15, 2018.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE